UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

FRANCIS X. BERKEMEIER and JANET G. BERKEMEIER,
individually, for themselves, and in their representative
capacity for all others similarly situated, currently or
prospectively,

C.A. No. 3:19-cv-12132

Hon. Robert H. Cleland
United States District Judge

                Plaintiffs,

v.

Hon. Stephanie Dawkins Davis
United States Magistrate Judge

THE CITY OF JACKSON, MICHIGAN, DEREK
DOBIES, Mayor and member of the City Council of the
City of Jackson, ARLENE ROBINSON, FREDDIE
DANCY, CRAIG PAPPIN, KELSEY HECK, COLLEEN
SULLIVAN, and JEROMY ALEXANDER, members of
the City Council, PATRICK BURTCH, City Manager,
JOHN DOE NO. 1, City Attorney, MARK M. PORTERFIELD,
Acting City Attorney, BETHANY M. SMITH, former City
Attorney, BRIAN TAYLOR, Chief Building Inspector, JOHN
O'CONNOR, City Inspector, MARK FISH, City Inspector,
JENNIFER L. MORRIS, Director of Neighborhood and
Economic Operations, and ELMER J. HITT, Director of
Police and Fire Services, in their official capacities, and
JANE DOE, City of Jackson police officer, in her official
capacity and in her individual capacity, and JOHN DOE
NO. 2, City of Jackson police officer, in his official
capacity and in his individual capacity,

                Defendants.

_____

Barry R. Powers  (P40589)
CRANBROOK LAW GROUP, P.C.
38550 Garfield Road, Suite A
Clinton Township, Michigan 48038
(248) 515-8599
Counsel for Plaintiffs

Audrey J. Forbush (P41744)
PLUNKETT COONEY
111 E. Court Street - Suite 1B
Flint, Michigan 48502
(810) 342-7014
Counsel for Defendants

_____

**VERIFIED AMENDED COMPLAINT**

FRANCIS X. BERKEMEIER and JANET G. BERKEMEIER, individually, for themselves, and in their representative capacity for all others similarly situated, currently or prospectively, Plaintiffs, state for their Verified Amended Complaint against THE CITY OF JACKSON, MICHIGAN, DEREK DOBIES, Mayor and member of the City Council of the City of Jackson, ARLENE ROBINSON, FREDDIE DANCY, CRAIG PAPPIN, KELSEY HECK, COLLEEN SULLIVAN, JEREMY ALEXANDER, members of the City Council, PATRICK BURTCH, City Manager,  JOHN DOE NO. 1, City Attorney, City of Jackson, MARK M. PORTERFIELD, Acting City Attorney, BRIAN TAYLOR, Chief Building Inspector, JOHN O'CONNOR, City Inspector, MARK FISH, City Inspector, JENNIFER L. MORRIS, Director of Neighborhood and Economic Operations, and ELMER J. HITT, Director of Police and Fire Services, in their official capacities, and JOHN DOE NO. 2, City of Jackson police officer, in his official capacity and in his individual capacity, and JOHN DOE NO. 3, City of Jackson police officer, in his official capacity and in his individual capacity, Defendants:

<u>Statement of Jurisdiction and Venue</u>

1.     This action arises under the constitution and laws of the United States, specifically, the fourth amendment made applicable to the states under the fourteenth amendment, guaranteeing freedom from unreasonable searches and seizures, the fifth amendment made applicable to the states under the fourteenth amendment, guaranteeing the right to due process, as well as 42 U.S.C. §1983 because Defendants, acting under

color of state law, have subjected and threaten to continue to subject Plaintiffs to the deprivation of rights, privileges and immunities secured by the constitution of the United States as detailed herein and are, therefore, liable to Plaintiffs for redress both at law and in equity.

2.     Plaintiffs bring this action against officials of the government of the City of Jackson, Michigan in their official capacities for equitable relief and damages and against certain other officials in their individual capacities for equitable relief and damages as those officials knew or should have known their actions violated established legal rules and clearly established legal rights of Plaintiffs.

3.     This Court has original jurisdiction over all claims against all defendants arising under the constitution and laws of the United States under 28 U.S.C. §§ 1331 and 1343. This Court has supplemental jurisdiction over all other claims asserted herein under 28 U.S.C. § 1367 as such are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

4.     This action is a case of actual controversy within the jurisdiction of this Court  such that this Court may declare the rights and other legal relations of Plaintiffs with the force and effect of a final judgment under  28 U.S.C. § 2201(a) and such further relief as may become necessary or proper under 28 U.S.C. § 2202.

5.     This Court has jurisdiction over all parties.

3

6.     Venue is proper in this Court under 28 U.S.C. § 1391.

Averments of Fact Common to All Counts

7.     This case is about the overarching aggression and attempts by the City of Jackson, Michigan, by adoption of an ordinance regulating residential real estate, and certain of its officials seeking unlawfully to enforce the ordinance with evil intent, under the guise of regulating residential properties by ordinance purporting to regulate "non-owner occupied" dwellings.

8.     Plaintiffs are persons, husband and wife, residing within the City of Jackson, Michigan, in the judicial district of this Court, who are owners of five separate parcels of residential real property, all of which are situated within the City of Jackson, Michigan.

9.     Of the five residential properties Plaintiffs own, two are being sold under land contract, two are owned by Plaintiff Janet G. Berkemeier subject to a life estate that Plaintiff Francis X. Berkemeier has retained in both. Both Berkemeiers own the fifth home as tenants by the entireties, which they use as their principal residence; Defendant City of Jackson has sought to regulate four of those as "non-owner occupied" even though land in which an owner has a life estate and land being sold on land contract are expressly exempt from regulation under the subject ordinance itself.

10.    Plaintiffs bring this class action individually in their own right and in the representative capacities on behalf of all others similarly situated, currently or

4

prospectively.

11.     Defendant the City of Jackson, Michigan, a corporate body politic, is an incorporated municipality serving as the county seat of Jackson County, Michigan, deriving powers as a home rule city under provisions of the constitution of Michigan of 1963 and Michigan statutes appertaining thereto, such as M.C.L. § 117.1, *et seq*.

12.     Michigan law, specifically M.C.L. § 117.3(K) empowers the City to adopt ordinances regulating residential real property.

13.     The City has adopted a number of such ordinances and regulations, one of which is the Non-owner Occupied Residential Property Register Article of the Code of Ordinances of the City of Jackson, Michigan, Article I, Sections 14-1, *et seq*. ("Article" or "Ordinance").

14.     That Article, which the City adopted on October 23, 2012 (effective 30 days thereafter) purports to regulate residential dwellings in which persons other than or in addition to the owner reside for the avowed purpose of ensuring safe, secure, and sanitary living conditions. Sections 14-2 and 14-3. A land contract vendee is an "owner." Section 14-3.

15.     That Article requires owners to register such dwellings and pay a registration fee on penalty of eviction. Section 14-1(1). In such case, "the chief building official shall order the owner to take immediate legal action as required to vacate the premises, including eviction proceedings." *Id*.

16.     Every two years, by July 1st of every even numbered year, an owner subject to the registration requirement must apply for a property registration and pay the required application fees, outstanding inspection fees, and applicable late charges to the municipal corporation. Secs. 14-6, 14-9(a). The registration fee is non-refundable. Sect. 14-6.

17.     Failure to apply for, register, or renew a property registration constitutes a violation of this Article and subjects the owner to late fees. Section 14-9(h). (Registration is not required where the "premises are occupied by a person with a documented or recorded life estate in the the premises." Section 14-5(4).) In addition to the chief building official, the chief fire official and the chief of police and their designated representatives are responsible for enforcing Article I.

18.     Those charged with enforcing Article I may inspect the dwellings as "necessary to enforce the provisions of this article" for the safeguarding of the "health, safety and welfare of the occupants of dwellings and of the general public." Sec. 14-42(1).

19.     Where the owner or occupant demands a warrant for inspection, the official "shall obtain a warrant from a court of competent jurisdiction." Sec. 14-42(5). The Article permits an *ex parte* warrantless inspection in an "emergency situation." *Id*. Code 1977, § 8.604; Ord. No. 93-22, § 1, 10-12-93; Ord. No. 2012-03, § 1, 2-21-12.  This is the only procedural safeguard or element of procedural due process offered to the

citizens of Jackson under the Article, pre-deprivation or post-deprivation. The Article provides no means for pre-compliance *bi-parte* review in front of a neutral decisionmaker or post-deprivation appeal or review. The warrant process is perfunctory, and the Article mandates that the *ex parte* warrant be issued on administrative application regardless of whether the application or any affidavit in support of such application meets any standards demonstrating any legitimate governmental purpose, whatsoever.

20.    On the degree of specificity required for the issuance of the warrant, the warrant section of this Article, varies significantly from the warrant section of the Housing Law of Michigan. Sec. 127 of Michigan Public Act 167 of 1917 provides:

> (1) In a nonemergency situation where the owner or occupant demands a warrant for inspection of the premises, the enforcing agency shall obtain a warrant from a court of competent jurisdiction. The enforcing agency shall prepare the warrant, stating the address of the building to be inspected, the nature of the inspection, as defined in this or other applicable acts, and the reasons for the inspection. It shall be appropriate and sufficient to set forth the basis for inspection (e.g., complaint, area or recurrent violation basis) established in this section, in other applicable acts or in rules or regulations. The warrant shall also state that it is issued pursuant to this section, and that it is for the purposes set forth in this and other acts which require that inspection be conducted.
> (2) If the court finds that the warrant is in proper form and in accord with this section, it shall be issued forthwith.
> (3) In the event of an emergency no warrant shall be required.

MCL § 125.527.

21.    Under Article I of the Code of Ordinances, the owner must pay inspection

7

fees; the failure to do so may result in the imposition of a lien on the subject real property and subjects the owner to a collection suit by the city. Sec. 14-43. Code 1977, § 8.605; Ord. No. 91-14, § 1, 4-23-91; Ord. No. 92-8, § 1, 5-19-92; Ord. No. 92-17, § 1, 10-20-92; Ord. No. 93-22, § 3, 10-12-93; Ord. No. 98-23, § 1, 8-18-98; Ord. No. 2012-03, § 1, 2-21-12.  Such collection remedies granted to the City are not subject to any challenge or review whatsoever.  The administrative applicant "shall obtain" the warrant, and the warrant "shall issue" upon such application.

22.    Nothing in Article I provides any type of mechanism for owners to challenge the inspection of their property, petition a neutral decisionmaker, and assert any other of their rights at any type of precompliance review before the inspection takes place.

23.    The single local magistrate of the City is charged with the obligation of issuing *ex parte* administrative warrants, which the Article makes mandatory. Thus, the warrants are systematically, habitually, perfunctorily, unconditionally, and as a matter of custom and policy, issued on some type of *ex parte* application only on the averment of City officials, whether supported by sworn testimony made on personal knowledge articulating a legal basis for issuance, mere hearsay, or less. The averments in support are routinely and automatically accepted, the applications granted, and the *ex parte* administrative warrants issued, all without challenge. Allegations given in support of the application, if any, are typically conclusory and lack the inclusion of a sworn statement

of facts on personal knowledge establishing probable cause or any good cause for such inspections. Such are, thus, made with no showing or articulation of any facts establishing a valid governmental purpose, rationale, logical basis, or legal basis. Such shortcomings effectively render the warrants arbitrary and capricious at best, or motivated by evil purpose or recklessness at worst, which is not surprising given that such issuance is mandated by legislative fiat. The issuance of the warrants is done on what is essentially a "rubber stamp" basis. The warrant process cannot function constitutionally, lawfully, or even effectively in this field and by such mechanism. Unless the magistrate scrutinizes a legislative or administrative assessment of broad factors not unique to the particular property and property owners and occupants at issue, he or she must be forced to issue such a "rubber stamp" warrant, which provides no protection at all to the property owner or occupant. Further, unlike the parallel state law, the Article sets forth no standards for the determination of what the warrant, application, or affidavit must provide or for its issuance.

24.    The constitution mandates that before a search or inspection is conducted, the government must give the owner a meaningful opportunity to contest an administrative search request by obtaining precompliance review in front of a neutral decisionmaker before the search or inspection occurs.

25.    Only after such a *bi-parte* hearing process may any magistrate properly and conclusively determine that an inspection is necessary for the safeguarding of the

"health, safety and welfare of the occupants of dwellings and of the general public."

26.    To satisfy constitutional guarantees against unreasonable searches and of notice and an opportunity to be heard, the review scheme, at a minimum, must give the owner a meaningful chance to contest an administrative search request in front of a neutral party before the search occurs.

27.    The mechanism for the inspection process the Article authorizes lacks any provision or safeguard of precompliance review; it allows absolutely no right of precompliance review or *bi-parte* challenge before the search occurs.

28.    Consequently, the Article is facially invalid as violative of constitutional guarantees of the right against unreasonable searches and seizures and of procedural due process comprised of notice and an opportunity to be heard reasonably calculated to inform citizens in advance so that they may enjoy the privilege of being present for, fully prepared for, and fully informed at, such proceeding, hearing, or administrative review.

29.    The City is liable to Plaintiffs as it has, through its Board of Councilors promulgated a facially unconstitutional Article and has conducted itself in the enforcement of such Article so as to run afoul of these guarantees under the fourth and fifth amendments, the right to privacy and to be secure in one's home, and the right to due process. Further, the City has employed customs, practices, and policies that further derogate such rights of its citizens. All inspections of residential real property, related

charges and fees are made and collected pursuant to and solely under the power the Article grants to the City and its officials for administration and enforcement.

30.     Defendant DEREK DOBIES is Mayor and member of the City Council of the City of Jackson.

31.     Defendants ARLENE ROBINSON, FREDDIE DANCY, CRAIG PAPPIN, KELSEY HECK, JEREMY ALEXANDER and COLLEEN SULLIVAN are members of the City Council, who, as such body, are elected by the City's electorate and serve as the official, sole, and ultimate legislative and administrative body and ultimate governmental authority for the municipality..

32.     Defendant PATRICK BURTCH is the City Manager, who is charged with the power, and, in fact, exercises and has exercised such power, to "make final interpretations of City regulations and various ordinances, codes and applicable laws to ensure compliance."

33.     Defendant JOHN DOE NO. 1, is the as yet unidentified City Attorney for the City of Jackson, (formerly Bethany M. Smith) who is charged with the power, and, in fact exercises and has exercised such power, to approve all ordinances, prosecute all violations of the City Code before the 12th District Court, and to respond to citizen complaints received by the law department and Defendant MARK M. PORTERFIELD, is, upon information and belief, Acting City Attorney, and, as such, is charged with the power, and, in fact exercises and has exercised such power, to approve all ordinances,

prosecute all violations of the City Code before the 12th District Court, and to respond to citizen complaints received by the law department, former City Attorney Bethany M Smith having resigned as City Attorney since the time Plaintiff Francis X. Berkemeier commenced this action *pro se.* Defendant BETHANY M. SMITH, is, upon information and belief, the former City Attorney, who upon information and belief, recently left that position; however, she was the City Attorney at the time Plaintiffs commenced this action and acted in such capacity at all times otherwise pertinent to this action.

34.    Defendant BRIAN TAYLOR is Chief Building Inspector, Defendant JOHN O'CONNOR is City Inspector, Defendant MARK FISH is City Inspector, JENNIFER L. MORRIS is Director of Neighborhood and Economic Operations, and ELMER J. HITT is Director of Police and Fire Services. As such, they are charged with the power to enforce the Article and specifically to carry out all punitive and remedial aspects of the Article, to order the owner to take corrective or other action, to enforce collection of fines and fees, record liens against the such property, and to carry out the inspections under the Article and they have, in fact, done so.

35.    All of the above identified and described Defendants, charged with enforcing the invalid and unconstitutional Article, are acting, continue to threaten to act, and have at all times pertinent acted in their official capacities so as to deprive Plaintiffs and others similarly situated of their constitutional rights, as specified herein, and are persons who are genuine threats to continue enforcing the invalid Article, and whose

actions in acting pursuant to the Article must be preliminarily and permanently restrained.

36.   Defendant JANE DOE is an as yet unidentified City of Jackson police officer sued in her official capacity and in her own individual capacity for forcibly entering the premises of Plaintiffs at 514 West Biddle over the objection of Plaintiffs, doing so by violently breaking away and substantially damaging the storm front door, the exterior front door, and two interior front doors of the dwelling on June 17, 2019, knowing that doing so was the product of an objectively unreasonable decision, there being no emergency or exigent circumstance, and in violation of established law prohibiting same and was in clear violation of Plaintiffs' established rights, and doing so with evil intent, recklessly or with callous indifference to the rights of Plaintiffs as owner and of the occupants. Before this intrusion into Plaintiffs' residential property. Plaintiff Janet G. Berkemeier withheld consent to her entry and to entry by anyone else. Plaintiff Francis X. Berkemeier withheld consent to her entry and to entry by anyone else. She told him that if he did not voluntarily unlock and open the doors to allow her into the home then she would have to make her way through the doors by force. He told her that doing so would be in violation of his constitutional rights. Plaintiffs refused to do any affirmative act to allow her entry. She proceeded to enter the home by force. A swarm of City officials, four to five, immediately entered. Among those following Defendant JANE DOE inside, were another City police officer yet to be identified, two

13

City inspectors (Defendant MARK FISH and Defendant JOHN O'CONNOR) and Defendant MARK M. PORTERFIELD of the City Attorney's Office. Immediately thereafter they thoroughly searched and inspected all areas and rooms in the home. The search lasted about one hour.

37.     Defendant JOHN DOE NO. 2 is an as yet unidentified City of Jackson police officer sued in his official capacity and in his individual capacity for, upon information and belief, forcibly entering the premises of a purported class member represented by Plaintiffs herein, who was a tenant in a home located at 1512 Lewis. Upon information and belief, she lived with her young daughters. Further upon information and belief: (a) on June 11, 2019, Defendant JOHN DOE NO. 2 appeared at her home with Defendant MARK FISH, both of whom were accompanied by several police cars and a number of other persons in City vehicles; (b) the tenant-mother stated that she resisted the search as wrongful; (c) Defendants asked her for her driver's license and she refused, saying this was her home and that they had no good reason to have her driver's license. Upon information and belief, the tenant-mother was fearful that she would be dispossessed if City officials gained entry into her home, in part because of an earlier case in which the City dispossessed one of its citizens in her neighborhood of his home for several days because his home was, in view of the City decisionmakers, uninhabitable for being overly cluttered. Despite her refusal to consent to his entry and her declining to use her key to unlock and open the door for him, Defendant JOHN DOE

14

NO. 2, upon information and belief, gained entry by forcibly prying the door open. Defendant knew or should have known that his doing so was the product of an objectively unreasonable decision, there being no emergency or exigent circumstance, was in violation of established law prohibiting same, and was in clear violation of the tenant-mother's established rights. Yet he did so with evil intent, recklessly or with callous indifference to the rights of the owner and all of the occupants of the home. Upon information and belief, City officials then entered and searched her home, while City police officers hand cuffed and imprisoned the tenant-mother in one of their police cars for the time of the search.

38.    Further, upon information and belief, Defendant JOHN DOE NO. 2 did use excessive force to injure the occupant in her person and falsely to arrest her by immobilizing and imprisoning her in his police car for a great while, and rousing and disrupting her young daughters from their slumber by cold, dark, harsh and cruel surprise, merely as retaliation for her protesting the search of a home not owned by her and by not consenting to the search and by not allowing ingress by affirmative act.

39.    City officials have charged Plaintiffs fees calculated at a rate of over $240/hour for their inspections of Plaintiffs' residential real property. In prior years they sent bills to Plaintiffs, as well, for fees calculated at an hourly rate in excess of $200. According to the City's website, the City currently charges those similarly situated to Plaintiffs initial housing inspection fees at the rate of $208.88 per hour, additional

inspections not included in the initial housing inspection at $208.88 per hour and an additional fee of $208.88 per hour for each search warrant "in addition to administrative and police costs incurred for a housing inspection conducted under an administrative search warrant for a dwelling." http://www.cityofjackson.org/303/Inspection-Fees (last accessed November 5, 2019). These fees have increased gradually over time.

40.    Defendants have systematically, habitually, continually, and as a matter of custom, practice and policy harassed Plaintiffs over a long period of time with great and unwarranted, unlawful, and unconstitutional molestation concerning these searches, even though Plaintiffs have repeatedly demanded recognition of their exempt status and have repeatedly provided the City with ample proof to support the exemptions. Plaintiffs received notices of inspection, charges for inspection, invoices, and threats on behalf of the City that Plaintiffs will face citations from one or more of the individual Defendants to appear before the Administrative Hearings Bureau, acting pursuant to and in enforcement of the constitutionally invalid Article (all insisting their properties fell within the purview of the ordinance, despite Plaintiffs' showings, and all without any explanation from the City to support its position – never setting forth any legal basis for their assertion Plaintiffs had to submit to regulation), dated June 8, 2016, July 11, 2016, July 28, 2016, July 29, 2016, December 13, 2016, June 17, 2017, December 21, 2016, January 16, 2017, January 17, 2017, May 8, 2017, May 11, 2017, April 12, 2018, March 14, 2019, April 20, 2019, and June 17, 2019. Further, Defendants procured an

administrative search warrant for Plaintiffs' property at 514 W. Biddle St. issued June 17, 2019 (the application under oath was hearsay; the affiant (Defendant Fish), before being presented with the administrative search warrant that day, had no personal knowledge of the facts alleged, as the exterior observation to support the warrant was made by a person not a party to the warrant application proceeding (that is, Defendant O'Connor), with Plaintiffs never being served with the Inspection Report of Defendant O'Connor (referenced in the Affidavit of Defendant Fish) as the basis for the Affidavit). Fish gave Plaintiffs the warrant referencing an attachment, but Fish failed to serve Plaintiffs  with the attachment referenced in the warrant. Plaintiff Francis X. Berkemeier pointed out to Fish the so-called attachment was missing. Fish then handed Plaintiffs another document, which was the report from the initial inspection O'Connor had conducted from the sidewalk, explaining that that report was what was meant by the word "attachment" in the warrant. Despite the deficiencies in and surrounding the warrant, that was the warrant City officials acted upon in forcibly gaining entrance to 514 W. Biddle St. on June 17, 2019. Whether the O'Connor report was ever presented to the magistrate, Plaintiffs have no way of knowing because, upon information and belief, the court does not open and maintain separate case files for each administrative warrant issued for each particular alleged non-owner occupied dwelling and the court does not assign specific case numbers to administrative warrant proceedings. Further, although the warrant itself is on what appears to be a standard court form that says "Case No." in

17

the upper right hand corner, the warrant (served on only Plaintiff Francis X. Berkemeier but not served on Plaintiff Janet G. Berkemeier), itself, contains no case number. Likewise, although the affidavit for adminstrative search warrant is on what appears to be a standard court form that says "Case No." in the upper right hand corner, the affidavit, itself, contains no case number.

41.    Plaintiffs were forced to reply with their own letters informing the City of their protest to the City's notices, demands, and charges were unconstitutional and unlawful on July 11, 2016, July 25, 2016, July 30, 2016, August 15, 2016, September 19, 2016, January 5, 2017, January 11, 2017, June 5, 2017, June 25, 2018,  April 20, 2019, May 3, 2019, and June 14, 2019.

42.    Defendants even attempted to force registration and inspection of properties of Plaintiffs that were exempt under the plain language of the Article itself – two properties exempt because Plaintiff Francis X. Berkemeier held only a life estate in them, and two others exempt because Plaintiffs held only land contract vendor interests in them. Thus, Defendants had absolutely no cause to inflict such harassment, even on the face of their own ordinance.

43.    On June 14, 2019, Plaintiffs wrote a forceful letter justifying their refusal to submit their property for search and inspection without some rationale from the City justifying such. Plaintiffs reminded the City in that letter that, in December of 2014, Plaintiff Francis X. Berkemeier had convinced the City to dismiss a similar complaint

the City filed against Plaintiff Francis X. Berkemeier with the Administrative Hearing Bureau for Plaintiff's non-registration of 514 W. Biddle. Plaintiffs pointed out that that complaint was no good because 514 W. Biddle was exempt under the very language of the ordinance. There followed a period of what appeared to be the City's acquiescence in Plaintiffs' position on this issue, during which the City left Plaintiffs alone. Inexplicably, the City later abruptly chose to retreat back to the same, indefensible position it had originally taken against Plaintiffs, resuming their harassment of Plaintiffs under the guise of the Article. Further, in 2017, the City adopted its anti-discrimination ordinance, the stated purpose of which was to ensure equal protection under law. This prompted Plaintiffs to file a complaint under that ordinance with the City's Human Relations Commission alleging virtually the same grievance it presents in the instant action, but relating only to the City's treatment of Plaintiffs' property known as 801 Third Street under the Article (exempt under the Article as being sold under land contract). In that complaint Plaintiffs asserted they were discriminated against when the City chose to keep coming after them to force them to register their exempt properties. The City responded to the complaint that the City was singling out Plaintiffs for wrongful prosecution under the Article by summarily dismissing that complaint because "there is no allegation of discrimination based on sexual orientation or gender identity." Beyond all of that, Plaintiffs continued to follow up with correspondence dated April 20, 2019, May 3, 2019, and June 14, 2019 repeatedly going on record with their frustration that

their demands remained unanswered over a period of years. Defendants have steadfastly refused to back down and have refused to reply in substance to Plaintiffs' protests and reservations of rights for a period of at least five years continuing to this day. Again, while there would be times when many months would pass without the City taking any action against Plaintiffs, which Plaintiffs perceived as periods of peace with the City, the City would always eventually come back to press anew the Plaintiffs ostensibly under the guise of enforcing the Article while ignoring its exemptions, though these same issues had already been comprehensively addressed and rehashed, time and time again.

44.    Instead of working with the Plaintiffs to resolve issues, they batter-rammed Plaintiffs' front door on June 17, 2019 on the strength of only an *ex parte* administrative warrant, doing considerable damage in the process, as noted above. Nothing in the *ex parte* warrant or in the record of the *ex parte* warrant process demonstrates any valid public interest that justified the intrusion.

45.    As a direct and proximate result of these constitutional violations, Plaintiffs have suffered grievous economic and non-economic injuries, including: loss of the front doors and related property damage; severe emotional injury; ongoing mental anguish and suffering; defamation; humiliation; embarrassment; social stigma; feelings of lack of self-worth and legitimacy; feelings of having been profoundly violated by such egregious and violent invasions of personal privacy and governmental invasion of dwellings.

20

46.     Additionally, all sums collected under the Article constitute an unconstitutional tax that the City must be made to disgorge as money had and received; alternatively, this Court should impose a constructive trust over such fund as wrongful gain to be held for the ultimate benefit of Plaintiffs.

## COUNT I

### FACIAL INVALIDITY OF ORDINANCE UNDER FOURTH AMENDMENT AND STRICT LIABILITY OF DEFENDANT THE CITY OF JACKSON FOR REDRESS UNDER 42 U.S.C. § 1983

### AND

### ACCOUNTABILITY OF INDIVIDUAL DEFENDANTS UNDER  42 U.S.C. § 1983

47.     The ordinance on its face violates constitutional guarantees of the right to privacy and the right to be free from unreasonable searches and seizures.

48.     The City, acting under color of local law, has deprived and threatens to continue to deprive Plaintiff of their rights under the fourth amendment to the constitution, made applicable to the states under the fourteenth amendment, as detailed herein. Likewise, the individual Defendants, acting under color of state law, have subjected, are subjecting, and threaten to continue to subject Plaintiffs to the deprivation of rights, privileges and immunities secured by the constitution and laws of the United States as detailed herein and are, therefore, liable to Plaintiffs for redress.

49.     Where the challenged governmental action is a legislative enactment itself, facial unconstitutionality imposes strict municipal liability on the City of Jackson under

21

42 U.S.C. § 1983.

50.     As a direct and proximate result of the deprivation of these constitutionally guaranteed rights and privileges pursuant to governmental enactments, custom, policy, and common plan, Plaintiffs have suffered damages as detailed herein. That is, by adoption, operation and enforcement of the Article, Defendants have caused and continue to cause unreasonable invasions of privacy, unreasonable searches and seizures without probable cause, and the unreasonable searches and seizures of Plaintiffs' very homes, intrusions into Plaintiffs' seclusion, intruding into the most precious sanctum sanctorum of modern men, women and children for peace and quietude, against which such intrusions are to be paramount under the fundamental laws of our nation and the most fundamental of our valued societal norms.

51.     In addition to the right to recover damages from the City and the individual Defendants under Section 1983, Plaintiffs are also entitled to the declaratory and injunctive relief from Defendants prayed for below.

## COUNT II

### FACIAL INVALIDITY OF ORDINANCE UNDER FIFTH AMENDMENT AND STRICT LIABILITY OF DEFENDANT THE CITY OF JACKSON FOR REDRESS UNDER  42 U.S.C. § 1983

### AND

### ACCOUNTABILITY OF INDIVIDUAL DEFENDANTS UNDER  42 U.S.C. § 1983

52.    The ordinance on its face violates constitutional guarantees of the fifth amendment right to procedural due process, that is, the rights to notice and an opportunity to be heard. Plaintiffs have a constitutionally protected property right in their dwellings, whether owned or occupied by them as non-owner tenants, land contract vendors, land contract vendees, life estate holders, or remainder holders, and further have a constitutionally protected property right in the money assessed as fees and fines under the Article, and the additional right not to have their estates in land encumbered by municipal collection liens authorized under the Article and the concomitant right that there shall be no deprivation of such property rights without procedural due process of law.

53.    The City, acting under color of local law, has deprived and threatens to continue to deprive Plaintiffs of their rights under the fifth amendment to the constitution, made applicable to the states under the fourteenth amendment, as detailed herein. Likewise, the individual Defendants, acting under color of state law, have

23

subjected, are subjecting, and threaten to continue to subject Plaintiffs to the deprivation of rights, privileges and immunities secured by the constitution and laws of the United States as detailed herein and are, therefore, liable to Plaintiffs for redress.

54.     Where the challenged governmental action is a legislative enactment itself, facial unconstitutionality imposes strict municipal liability on the City of Jackson under 42 U.S.C. § 1983.

55.     As a direct and proximate result of the deprivation of these constitutionally guaranteed rights and privileges pursuant to governmental enactments, custom, policy, and common plan, Plaintiffs have suffered damages as detailed herein. That is, by adoption, operation and enforcement of the Article, Defendants have caused and continue to cause Plaintiffs deprivation of their property rights without procedural due process of law under the fifth amendment, the most basic right guaranteeing fundamental fairness in a free society. Plaintiffs are entitled to notice and opportunity for hearing appropriate to the nature of the case; Defendants have deprived and are continuing to deprive Plaintiffs of these fundamental rights under their enactments, customs, policies, and common plans. The Article is woefully bereft of ensuring precompliance *bi-parte* review at a hearing in front of a neutral arbiter or decisionmaker before the search is to take place under the due process clause. The right to be heard is of no value unless one is properly informed that the matter is pending and it is up to such person whether to contest it or consent to it. Plaintiffs have been unconstitutionally

24

deprived of the elementary and fundamental requirement of due process that is notice, reasonably calculated under all the circumstances, to apprise them as interested persons of the pendency of the proceeding and the opportunity to present their objections before the possibility of any deprivation of property rights may come into play. The Article on its face falls far short of meeting such requirements under the circumstances.

56.     In addition to the right to recover damages from the City and the individual Defendants under Section 1983, Plaintiffs are also entitled to the declaratory and injunctive relief from Defendants prayed for below. The ordinance on its face violates constitutional guarantees of the right to procedural due process.

## COUNT III

### INDIVIDUAL LIABILITY OF JANE DOE AND JOHN DOE 2 UNDER 42 U.S.C. § 1983 FOR DESTRUCTION OF PROPERTY, UNREASONABLE SEARCHES AND SEIZURES, AND THE DENIAL OF PROCEDURAL DUE PROCESS IN VIOLATION OF CLEARLY ESTABLISHED LEGAL RIGHTS OF PLAINTIFFS

57.     Defendants Jane Doe and John Doe 2 acted violently and with excessive force, objectively unreasonably, with evil intent, or with reckless or callous disregard or indifference to the constitutional rights of Plaintiffs, in violation of clear legal rights of Plaintiffs and established law in maliciously damaging their property and in intruding on their privacy.

58.     Such acts did not require the exercise of judgment and discretion under the circumstances. Such acts caused the deprivation of Plaintiffs' fourth and fifth

amendment rights as incorporated into state law by the fourteenth amendment, as detailed herein, by such individual Defendants acting under color of state law and thus in violation of 42 U.S.C. § 1983.

59.   As a direct and proximate result of their actions, Plaintiffs suffered deprivations of the constitutional rights detailed herein, namely the right to privacy and to be free of unreasonable searches and seizures under the fourth amendment and the right to procedural due process; that is, pre-compliance review as detailed herein.

60.   Such defendants are not entitled to assert personal immunity, governmental immunity, or qualified immunity under law because of the directness and nature of their acts causing the constitutional deprivations both under color of their authority as state officials and acting under color of local enactments, policies, customs and common plan in purporting to enforce the Article.

61.   As a direct and proximate result of the deprivation of constitutionally guaranteed rights and privileges, Plaintiffs have suffered damages as detailed herein.

62.   In addition to the right to recover damages from these individual Defendants, Plaintiffs are also entitled to the declaratory and injunctive relief prayed for below.

## COUNT IV

## SPECIFIC ENFORCEMENT OF CITY OF JACKSON CHARTER PROVISION 10.1 – RIGHT TO INITIATIVE

63.     Section 10.1 of the Charter of the City of Jackson provides that a proposed ordinance supported by petition signed by qualified electors equal to ten (10) percent of the total vote for all candidates for mayor at the last general city election upon validation by the Clerk shall be submitted to the City Council for passage or to be made the subject of a special city election in which the ordinance shall be submitted to a vote of the qualified electors of the City.

64.     On May 15, 2013, Robert Tulloch, proponent of an ordinance to provide for the repeal of the Article, submitted to the City Council a qualifying petition accompanying such proposed ordinance under Section 10.1 that met the requirements of Section 10.1 calling for official action on the petition, and the Clerk duly validated the petition. Specifically, the petition endorsed the repeal of the Non-owner Occupied Residential Property Registration ordinance, updates to Chapter 14 of the City's Housing Code, and also the City's Resolution 2012-25 establishing and revising the various fees charged for inspection related services.

65.     Notwithstanding the sufficiency of the petition, the City Council refused to act on it. That is, the City Council neither passed the ordinance without alteration nor called a special city election for submission of the ordinance to a vote of the qualified electors of the city, as required by the charter provision granting the right to initiative,

27

set out in Section 10.1 of the Charter.

66.    The ostensible reason for the City Council's failure to honor the right to initiative was that the petition did not meet the deadline for it to be acted upon; however, there is no such deadline provided in Section 10.1. The City Council relied on timing requirements in Section 10.2 pertaining to the right of referendum instead of the charter provision allowing for initiative.

67.    The City Council passed a resolution at its June 25, 2013 regular meeting rejecting the petition. The City Council's action in allowing the petition to die was errant or was founded in improper motive not to upset the established framework of the residential property registration ordinance, thereby stifling and frustrating the intentions of the petitioner and the will of those numerous (379) qualified electors signing the petition and thus endorsing the repealer ordinance, all of whose signatures were duly verified in accordance with the right to initiative charter provision.

68.    Plaintiffs are entitled to have the Court compel the City Council to conform its conduct and legislative action so it is consistent with its own charter and thereby accept and move forward on the petition as submitted. That is, if the City Council itself does not pass the ordinance without alteration, it must call a special city election for the purpose of allowing qualified electors of the City to vote on it.

69.    In the interim, the City is unlawfully collecting fees, fines, and charges, for which it must be held to account.

## COUNT V

## <u>EQUITABLE RELIEF</u>

70.    Plaintiffs have presented this Court with an actual case and controversy sharp and ripe for adjudication, as demonstrated by the legal and constitutional positions Defendants have asserted in diametric opposition to those of Plaintiffs, and example of which is the voluminous correspondence detailed above which only served to exacerbate matters, culminating in the malicious destruction of parts of Plaintiffs' residential real property.

71.    The Court may, and should, under 28 U.S.C. § 2201, declare the respective rights and legal relations of the parties *inter sese*.

72.    Specifically, Plaintiffs pray that this Court enter a declaratory judgment that the Article is facially unconstitutional as violative of the rights of its citizens under the fourth and fifth amendments to the constitution made applicable to the states under the fourteenth amendment and to order the imposition of  a constructive trust over all monies and other benefits wrongfully received or collected by the City of Jackson pursuant to its unconstitutional enactment and the wrongful enforcement of such enactment or, alternatively, the disgorgement of such fund or benefit to or for the benefits of Plaintiffs and the class they purport to represent in this action, along with such other or further declaratory or equitable relief this Court deems just.  Additionally, this Court must compel the City to submit to a vote of the electorate the repealer

29

ordinance pursuant to the duly validated petition of proponent Robert Tulloch under Section 10.1 of the Charter granting the right of initiative, compel the disgorgement of monies the City has unlawfully collected in the interim, or, alternatively, impose on such funds a constructive trust for the benefit of Plaintiffs.

73.    Further, Plaintiffs lack an adequate remedy at law to redress the threat of harm and ongoing harm to their constitutional rights, and this Court's intervention by preliminary and permanent injunction or decree is necessary to protect Plaintiffs' constitutional rights as established herein.

74.    Without this Court's equitable intervention by granting such injunctive relief, Plaintiffs will be irreparably harmed by the continuing violation of their constitutional rights.

75.    As demonstrated above, Plaintiffs are likely to prevail on the merits of one or all of their substantive claims set out above, the balance of harms and equities substantially favors Plaintiffs, and such injunctive relief would preserve the peace and status quo, as well as serve the public interest in the constitutional governmental regulation of private property and in the health, safety, and public morals of the citizens of the City of Jackson while promoting private investment in the improvement and expansion of choices of living quarters and residential properties in the City of Jackson.

76.    Specifically, Plaintiffs pray that this Court enter a preliminary injunction, followed by a permanent injunction restraining Defendants and those acting in active

concert with them who have notice of such injunction from enforcing any provision of the Article or collecting any further sums pursuant to it as facially violative of Plaintiffs' fourth and fifth amendment rights as detailed and for the reasons detailed herein, along with such other or further declaratory or equitable relief this Court deems just.

## COUNT VI

### DEMAND FOR JUDGMENT AND
### PRAYER FOR SPECIFIC EQUITABLE RELIEF

77.   Plaintiffs hereby demand judgment against Defendants for all actual, punitive, and other damages to which they are entitled.

78.   Plaintiffs further specifically request that this Court grant them the declaratory, injunctive, and other equitable relief detailed in Count IV, above.

79.   Plaintiffs further pray this Court for an award of court costs and other expenses of litigation, including attorney's fees under 42 U.S.C. § 1988 or other applicable law.

Respectfully submitted,

CRANBROOK LAW GROUP, P.C.

By_____/s/Barry R. Powers_____
     Barry R. Powers  (P40589)
38550 Garfield Road, Suite A
Clinton Township, Michigan 48038
(248) 515-8599
Counsel for Plaintiffs

DATED: November 6, 2019

31

## **<u>VERIFICATION</u>**

I declare under penalty of perjury that the foregoing is true and accurate.

Executed on November 6, 2019

<u>      /s/Francis X. Berkemeier      </u>
FRANCIS X. BERKEMEIER