**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

_____

FRANCIS X. BERKEMEIER
and JANET G. BERKEMEIER,

     Plaintiffs,

v.                                  Case No. 19-12132

CITY OF JACKSON, et al.,

     Defendants.

_____/

**OPINION AND ORDER OVERRULING PLAINTIFF'S OBJECTIONS, ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION, AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiffs Francis X. Berkemeier and Janet G. Berkemeier, who own several residential properties, bring this action challenging the constitutionality of Jackson Michigan's municipal ordinance requiring the registration of non-owner-occupied residential properties and additionally subjecting them to periodic building inspections. The court referred all pretrial matters in this action to Magistrate Judge Elizabeth Stafford. (ECF No. 27.) Defendants filed a motion for summary judgment. (ECF No. 34.) The Magistrate Judge recommended that the motion be granted. (ECF No. 51) The Magistrate also issued an opinion and order striking Plaintiff's response to Defendants' motion for summary judgment as untimely. (ECF No 50.)

Plaintiffs have filed two objections to the Report and Recommendation ("R&R"). (ECF No. 52.) Defendants have now fully responded to Plaintiffs' objections. (ECF No. 53.) The court has reviewed the record and does not find a hearing to be necessary.

E.D. Mich. LR 7.1(f)(2). For the reasons provided below, the court will overrule Plaintiff's objections and adopt the R&R.

## I. BACKGROUND

### A. Facts

Plaintiffs own five residential properties in Jackson, Michigan, four of which Defendant City of Jackson has sought to regulate as "non-owner occupied" properties. (ECF No. 10, PageID.113.) In addition to the City of Jackson itself, Plaintiffs named as Defendants numerous City officials and its employees.[1]

In 2012, the City of Jackson adopted a Non-Owner-Occupied Residential Property Registration ("NOORPR") Ordinance. The Ordinance requires that landlords register their properties with the City by completing a form, paying a renewal fee every two years, and complying with habitability standards. *See* City of Jackson Code of Ordinances ch 14, § 14.4 (2018).[2]  (*See* ECF No. 1-2.) The definition of rental property includes "(1) A traditional lease with a written lease contract; (2) A lease or rental arrangement with no written contract; (3) A unit in which a non-owner is allowed to reside in exchange for providing services to the owner, whether the owner resides in the unit or resides elsewhere. . . ." *Id.* § 14.4.

---

[1]     Plaintiffs sue the following Defendants in their official capacities: Derek Dobies, a City Council member and the Mayor of Jackson; City Council members Arlene Robinson, Freddie Dancy, Craig Pappin, Kelsey Heck, Jeremy Alexander, and Colleen Sullivan; City Manager Patrick Burtch; City Attorney Mark M. Porterfield; former City Attorney Bethany M. Smith; Chief Building Inspector Brian Taylor; city inspectors John O'Connor and Mark Fish; Director of Neighborhood and Economic Operations Jennifer L. Morris; Director of Police and Fire Services Elmer J. Hitt; and an unidentified city attorney, John Doe No. 1. Plaintiffs sue city police officers Jane Doe and John Doe No. 2 in their official and individual capacities. (*See* ECF No. 10.)
[2]     Available at https://library.municode.com/mi/jackson/codes /code_of_ordinances/336643 (last visited Sept. 9, 2022).

The Ordinance provides that registered rental properties are subject to inspections "as are necessary to enforce the provisions of this article" and "to safeguard the health, safety and welfare of the occupants of dwellings and of the general public." *Id.* §14-42. Specifically, the Ordinance provides that:

> In an emergency situation, the chief building official, chief of police and fire official have the right to enter at any time. for purposes of this article, an emergency shall exist when the chief building official, chief of police or fire official has reasonable grounds to believe that a condition hazardous to health or safety exists on the premises and requires immediate attention . . .
> In a nonemergency situation or where the owner or occupant of any dwelling demands a warrant for inspection of the premises, the chief building official, chief of police or fire official *shall obtain a warrant from a court of competent jurisdiction.*

*Id.* §14-42 (emphasis added). The owner is responsible for inspection fees. If the inspector finds no "existing condition [that] constitutes a violation of this article[,]" then the building department "shall" issue "a certificate of compliance." *Id.* § 14-42.1. However, when an inspection uncovers "a condition that would constitute a violation of this article . . .  an order to comply with this article shall be issued immediately and served upon the owner in accordance with section 14-45. Upon reinspection and proof of compliance, the order shall be rescinded and a certificate of compliance shall be issued." *Id.*

Violations of the NOORPR Ordinance constitute "a blight violation subject to the penalties [and] . . . [e]ach day that a [violation] continues to exist is a separate offense." *Id.* § 14-17. Additionally, the version of the Ordinance effective in 2019 stated that:

> [I]f a summary proceeding action is pending for a non-owner occupied residential dwelling or unit, when there is no current, valid registration for a non-owner occupied residential dwelling or unit, no rent payments shall be accepted, retained, or recoverable by the owner or lessor of the non-owner occupied residential dwelling or unit for the period of time in which the non-

3

owner occupied residential dwelling or unit was not registered under this
article.

*Id.*

In June 2019, inspectors affixed a notice on the door of Plaintiffs' property at 514

West Biddle Street stating that an inspection would be conducted on June 17, 2019.

(ECF No. 34-3, PageID.496-498.) The notice stated that: "[a]bsent voluntary entry,

inspectors and officer(s) from the Jackson Police Department will enter the property

under authority of an ADMINISTRATIVE SEARCH WARRANT to conduct the required

Inspection. If necessary, entry will be gained through execution of the warrant." (ECF

No. 34-5, PageID.574.) The notice included a phone number for the reader to call if he

had questions. (*Id.*)

The administrative warrant application in the present case included an affidavit

from Defendant Mark Fish, an inspector for the City of Jackson, attested that "[a]n

exterior inspection of [514 West Biddle] was conducted on 4/30/2019, and violations of

the City of Jackson Housing Code were cited and enumerated." (ECF No. 1, PageID.52;

ECF No. 34-6, PageID.576.) Specifically, an inspection report attached to the affidavit

indicated that:

1. The property was not registered pursuant to NOORPR;
2. Exterior paint deteriorated at attic windows and overhead doors, which
   was suspected of containing lead;
3. Foundation was not weatherproofed;
4. Concrete stairs leading to the property entrance were cracked and lacked
   a safety railing;
5. Electrical meter was missing;
6. Sidewalk was not in good repair.

(ECF No. 1, PageID.53.)

Plaintiff Francis testified in his deposition that he never registered 514 West

Biddle under NOORPR, even though it was occupied for over ten years by his

4

employee, David Iuni, who lived at the property without paying rent because in exchange for maintenance and property management services at all five of Plaintiffs' properties. (ECF No. 34-3, PageID.461-62, 472.) According to Plaintiff Francis, the property had not undergone an interior inspection since 1974, when he acquired the property. (*Id.*, PageID.503.)

On June 17, 2019, both Plaintiffs, as well as their tenant Mr. Iuni, were present outside 514 West Biddle Street when Defendants Mark Porterfield (Assistant City Attorney), Mark Fish (inspector), John O'Connor (inspector), and two unidentified Jackson police officers (listed in the complaint as "John Doe 2" and "Jane Doe")— possessing a signed administrative warrant—requested entry to the property. (ECF No. 1, PageID.52; ECF No. 34-3, PageID.480, 501-507.) When Plaintiffs refused to allow Defendants to enter voluntarily, the two Defendant officers forced entry into the property using a battering ram on the front door and two interior entry doors. (*Id*, PageID.507-08.) Plaintiff Francis testified that this damaged the doors and door jams, necessitating repairs totaling "in excess of a thousand dollars." (*Id.*, PageID.508-09.) According to Defendants, the inspection uncovered forty-one code violations at the property. (ECF No. 34, PageID.415.)

### B. Procedural History

Plaintiffs commenced the present action in July 2019. (*See* ECF No. 1.) Plaintiffs' amended complaint contains six counts. (*See* ECF No. 10.)

- *Count I* alleges that NOORPR Ordinance violates the Fourth Amendment "on its face."
- *Count II* alleges that NOORPR Ordinance violates the Fifth Amendment's procedural due process requirements "on its face."

- *Count III* alleges that Defendant Jackson police officers acted with "excessive force" and demonstrated "indifference to [Plaintiffs'] constitutional rights" by "maliciously damaging their property and in intruding on their privacy."

- *Count IV* seeks a "specific enforcement" order "compel[ling]" Defendant Mayor and City Council members to hold a special election for voters to consider a 2013 ballot petition seeking to repeal the NOORPR Ordinance.

- *Count V* requests "equitable relief" and a "declaratory judgment" that NOORPR is unconstitutional and a constructive trust over all monies and other benefits wrongfully received or collected by the City.

- *Count VI* is a "demand for judgment and prayer for equitable relief"

(*Id.*)

The court referred all pre-trial matters in this action to Magistrate Judge Elizabeth Stafford. (ECF No. 27.) After being previously extended, the dispositive motion cut-off was set for April 5, 2021. (*See* ECF No. 25.) On April 5, 2021, Defendants filed the motion for summary judgment presently at issue seeking summary judgment on all claims (ECF No. 34), and the next day, Judge Stafford entered a scheduling order extending discovery and moving the dispositive motion deadline to July 7, 2021. (ECF No. 36.) This order, which was jointly submitted by the parties, did not mention Defendants' pending motion for summary judgment. Defendants filed no response to the pending summary judgment motion. After the new, extended dispositive motion deadline had passed without further filings, on August 6, 2021, Magistrate Judge Stafford held a telephonic conference to determine the status of the case. During the conference, "defense counsel said that Defendants had no intent to withdraw their motion for summary judgment when they stipulated to adjourn the dispositive motions deadline." (ECF No. 39, PageID.586-87.) Plaintiffs' counsel indicated that "he did not respond to the motion because of his discussions with defense counsel." (*Id.*) Magistrate Judge Stafford subsequently entered an order requiring Plaintiffs to show

cause "why they should be granted leave to file a late response to Defendants' Motion for Summary Judgment" and order that such a motion be supported by specific legal citations. (*Id*.)

Plaintiffs' counsel responded to the show cause order by filing a "Motion for Leave to File Out of Time Brief in Response to . . . Defendants[' Motion] for Summary Judgment and to file [a] Cross-Motion for Summary Judgment," which consisted of a single paragraph with no legal or factual support for why Plaintiffs should be allowed to file a late response. (*See* ECF No. 40, PageID.589.) At the same time, Plaintiffs also filed a copy of the brief it sought permission to file. (*See* ECF No. 41.) The brief is purported to both respond to Defendants' motion for summary judgment and assert a cross-motion for summary judgment. (*See id.*)

Defendants then moved to strike this new brief (*see* ECF No. 44), and Plaintiffs in turn filed a "Reply Brief In Support Of Plaintiffs' Motion For Leave To File Out Of Time Brief," (*see* ECF No. 45). In a December 17, 2021 Order and Opinion, Magistrate Judge Stafford granted Defendants' motion to strike Plaintiff's late response brief because "Plaintiffs do not show that they missed the [briefing] deadlines because of excusable neglect." (ECF No. 50, PageID.758-59.)

On December 20, 2021, Magistrate Judge Stafford issued a Report & Recommendation ("R&R") that would grant Defendants' motion for summary judgment. (ECF No. 51). Judge Stafford concluded that Defendants had "met their burden of showing" the absence of a genuine issue as to a material fact. (*Id.*, PageID.763.) Because it was undisputed that Defendants "acted under a warrant and Jackson's ordinance has a warrant requirement," the R&R finds that "[P]laintiffs have no Fourth

Amendment injury—actual or impending—to satisfy the Article III standing requirement"

and "sustain their facial attack." (*Id.*, PageID.769.) The R&R further recommends that

summary judgment should be granted on Plaintiffs' other claims because such claims

"lack merit." And it finds "Plaintiffs have identified no independent federal causes of

action for them. (*Id.*, PageID.770-71.) Plaintiffs have filed two objections. (ECF No. 52.)

The first objection addresses Magistrate Judge Stafford's "Opinion and Order" issued on

December 17, 2021, while the second addresses the proposed R&R issued on

December 20, 2021.

## II. STANDARD

A Magistrate Judge's ruling on non-dispositive and dispositive motions is

reviewed under different standards. After a Magistrate Judge issues a decision on a

non-dispositive motion, "[t]he district judge in the case must consider timely objections

and modify or set aside any part of the order that is clearly erroneous or is contrary to

law." Fed. R. Civ. P. 72(a); *see also* 28 U.S.C. § 636(b)(1)(A) (allowing a district court to

"reconsider" non-dispositive orders of a Magistrate Judge that are "clearly erroneous or

contrary to law").

"[A] finding is 'clearly erroneous' when although there is evidence to support it,

the reviewing court on the entire evidence is left with the definite and firm conviction that

a mistake has been committed." *Anderson v. Bessemer City*, 470 U.S. 564, 573 (1985)

(quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)).

"Where there are two permissible views of the evidence ... [the] choice between them

cannot be clearly erroneous." *Id.* at 574.

8

"[A]n order is 'contrary to the law' when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205, 219 (6th Cir. 2019). A district court reviews legal determinations of the Magistrate Judge de novo. *Id.*

By contrast, when a party files timely objections to an R&R on a dispositive motion—like a motion for summary judgment—the court "make[s] a de novo determination of those portions of the report or specified findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also United States v. Raddatz*, 447 U.S. 667, 673-74 (1980). This process provides the court "the opportunity to consider the specific contentions of the parties," *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981), and "enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute." *Thomas v. Arn*, 474 U.S. 140, 147 (1985). After re-examining the evidence relevant to these objections, the court determines whether the recommendation should be accepted, rejected, or modified in whole or in part. 28 U.S.C. § 636(b)(1).

### III. DISCUSSION

### A. First Objection

Plaintiffs argue that Magistrate Judge Stafford's December 17th "Order and Opinion" striking their summary judgment briefing "solely on the strength of unrecorded[,] inaccurate and misleading statements oral statements of defense counsel" made during a telephonic status conference should be overruled. (ECF No. 52, PageID.775.) Further, Plaintiffs contend that "the Magistrate's December 17, [2021] decision was simply part and parcel" with her R&R because it completely barred

9

Plaintiffs from responding to Defendants' summary judgment motion. (*Id.*, PageID.779-80.) Plaintiffs also challenge the standard of review that should be applied to this objection; they reason that the striking order actually be considered a "dispositive" ruling that "the Magistrate lacks authority to make" on her own. (*Id.*) Therefore, Plaintiffs contend that the court is obligated to review the December 17th ruling using a "de novo" standard of review. (*Id.*, PageID.774.) While long on rhetoric, the court finds that this objection to lack a valid legal basis; therefore, the court will overrule it.

As explained above, the appropriate standard of review for a Magistrate Judge's ruling depends on whether the matter is considered "dispositive" or "non-dispositive" under the Federal Rule Civil Procedure 72(a), which reserves "de-novo" for "a pretrial matter dispositive of a claim or defense."[3] But "[t]he list of dispositive motions contained in [28 U.S.C.] § 636(b)(1)(A) is nonexhaustive," and Rule 72 has been interpreted as giving the court discretion to consider whether a specific matter proves *dispositive* in a particular case. *Vogel v. U.S. Off. Prod. Co.,* 258 F.3d 509, 514-15 (6th Cir. 2001) ("In determining whether a particular motion is dispositive, this court undertakes a functional analysis of the motion's potential effect on litigation."). *See also* Wright & Miller, 12 Fed. Prac. & Proc. Civ. § 3068.2 (3d ed.) ("[Rule 72]'s approach permits the courts to reach commonsense decisions rather than becoming mired in a game of labels.").

---

[3]    It is clear that "dispositive matters" includes eight types of motions explicitly enumerated in federal statute. *See* 28 U.S.C. § 636(b)(1)(A) (listing motions "for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action" as dispositive motions).

A recent decision aptly summarizes how courts in this circuit determine if a

specific motion to strike constitutes a *dispositive* motion:

> Courts disagree as to whether a motion to strike is a dispositive motion. "[T]he Sixth Circuit has not addressed this precise issue." *Herrerra v. Michigan Dep't of Corr.*, No. 10-11215, 2011 WL 3862426, at *3 n.1 (E.D. Mich. July 22, 2011). While there is a lack of consensus among the courts, the decision as to whether a motion to strike was dispositive or non-dispositive turns on the particular issue before the court. Where a motion to strike concerns a dispositive issue enumerated in § 636(b)(1)(A), such as striking a pleading, courts have determined the ruling on the motion to be a dispositive one. *Herrerra v. Michigan Dep't of Corr.*, No. 10-11215, 2011 WL 3862426, at *3 n.1 (E.D. Mich. July 22, 2011) (citations omitted) ("Although the Sixth Circuit has not addressed this precise issue, it has held that striking ... a pleading as a discovery sanction is considered a dispositive motion outside of a magistrate judge's authority to hear and determine pursuant to 28 U.S.C. § 636(b)."); *Jeeper's of Auburn, Inc. v. KWJB Enter., L.L.C.*, No. 10-13682, 2011 WL 1899195, at *1 (E.D. Mich. Mar. 16, 2011), report and recommendation adopted, No. 10-13682, 2011 WL 1899531 (E.D. Mich. May 19, 2011) ("A motion to strike an affirmative defense is generally considered to be a dispositive motion....")
>
> If a motion to strike involves a non-dispositive issue, such as striking portions of a complaint, courts have concluded that it is a non-dispositive one. *MCC Mgmt. of Naples, Inc. v. Arnold & Porter, LLP*, 2008 WL 4642835, at *1 (M.D. Fl. Oct. 20, 2008) ("The Motion to Strike was not itself dispositive of any claim, as it only sought to strike certain paragraphs of the Second Amended Complaint.... [T]herefore[,] the magistrate judge properly resolved the motion by order."); *Nat'l Bankers Tr. Corp. v. Peak Logistics, LLC*, No. 12-2268 A/P, 2012 WL 12909869, at *2 n.1 (W.D. Tenn. June 1, 2012) (reasoning "a Motion to Strike paragraphs 41 and 42 of the Complaint, which deal solely with the non-dispositive, evidentiary issue of insurance coverage" was a non-dispositive motion).

*Berry v. Citi Credit Bureau*, No. 18-02654, 2020 WL 4596774, at *3 (W.D. Tenn.

Aug. 11, 2020).

Applying the reasoning of *Berry*, the court finds that Magistrate Judge Stafford's

ruling striking Plaintiffs' response brief is a *non-dispositive* ruling subject to a "clearly

erroneous" standard of review. A party moving for summary judgment always bears the

burden of demonstrating that no material facts are in dispute. *See Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp.,* 475 U.S. at 587 (1986) "The fact that the non-moving party fails to respond to the motion does not lessen the burden on either the moving party or the court to demonstrate that summary judgment is appropriate." *High Concrete Tech., LLC v. Korolath of New England, Inc.*, 665 F. Supp. 2d 883, 887 (S.D. Ohio 2009) (citing *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 410 (6th Cir. 1992); *Carver v. Bunch*, 946 F.2d 451, 454-455 (6th Cir.1991)). Consequently, the failure to timely file a response brief here opposing summary judgment did not directly determine the outcome of the summary judgment motion or the viability of Plaintiff's claims. Put simply, the validity of Defendants' motion for summary judgment turns not on whether a response brief has been filed but on the existence of factual and legal support for the initial motion. Plaintiff's arguments amount to nothing more than speculation that their arguments against summary judgment would have led to a different outcome on the motion. Therefore, the Magistrate Judge's order striking the brief falls outside the gamut of "dispositive" rulings contemplated by Rule 72.

But, regardless of the standard of review applied, the court finds that Magistrate Judge Stafford reached the correct decision when she struck Plaintiffs' untimely response brief. Plaintiffs not only missed the deadline for responding to Defendants' motion for summary judgment by about four months, it was also filed more than six weeks after the *extended* dispositive motion deadline. (*See* ECF Nos. 36, 41.) Federal Rule of Civil Procedure 6(b)(1) provides that if a motion "to extend time" is "made after the time has expired," the moving party must show "excusable neglect" to obtain an extension. Determining excusable neglect depends on the balancing of five factors: (1) the danger of prejudice to the opposing party, (2) the length of the delay and its

potential impact on judicial proceedings, (3) the reason for the delay, (4) whether the delay was within the reasonable control of the party requesting an extension, and (5) whether the late-filing party acted in good faith. *Nafziger v. McDermott Int'l, Inc.*, 467 F.3d 514, 522 (6th Cir. 2006) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)).

In response to Magistrate Judge Stafford's show cause order, directing Plaintiffs to provide specific reasons and citations justifying an extension, Plaintiffs filed only a short perfunctory paragraph. (*See* ECF No. 40.) Because Plaintiffs bear the burden of demonstrating excusable neglect, *see Mizori v. United States,* 23 F.4th 702, 705 (6th Cir. 2022), their failure to provide a substantive response to the order was, on its own, sufficient for the Magistrate Judge to deny Plaintiffs request to file a late response brief, *see, Stevens v. Liberty Ins. Corp.*, No. 11-14695, 2012 WL 2408719, at *1 (E.D. Mich. June 26, 2012) (Cleland, J.) (rejecting a plaintiff's one-paragraph "explanation for her delay in responding to Defendant's summary judgment" as "inadequate to excuse her untimely filing").

However, even considering Plaintiffs' more detailed argument belatedly presented in their present motion for reconsideration, it is clear that Plaintiffs cannot demonstrate excusable neglect. The crux of Plaintiffs' argumentation in favor of an extension appears to be that Defense counsel "reneged" on verbal assurances that "Defendants filed the motion [for summary judgment] merely as a prophylactic measure without expectation or intent that Plaintiffs respond within [the] 21 days given." (ECF No. 52, PageID.787; ECF No. 45, PageID.646.) According to Plaintiffs, the parties had jointly agreed to yet another extension of the discovery, and discovery would need to be

completed before its dispositive motion could be filed. But the Magistrate Judge's ruling thoroughly disposed of this argument. She first noted that Plaintiffs had "provid[ed] no evidentiary support for the claimed agreement"—which Defendants expressly denied ever existed. (ECF No. 50, PageID.759.) And she correctly concluded that under Rule 16, "[e]ven if Plaintiffs had submitted proof that the parties agreed to delay the dispositive motions deadline, that agreement had no effect without the court approving it." (*Id* (citing Fed. R. Civ. P. 16(b)(4)).) Plaintiff's present objection provides no additional evidentiary support or citations of authority addressing the Magistrate Judge's straightforward holding. Here, Plaintiffs did not simply miss a filing deadline by a few days; rather, by all indications, it appears that Plaintiffs flagrantly ignored deadlines within their control, set by the court months earlier. Nothing indicates that Plaintiffs' failure to respond or request an extension was due to circumstances beyond their control. *See United States v. Munoz*, 605 F.3d 359, 372 (6th Cir. 2010) (noting that when weighing excusable neglect, "the excuse given for the late filing must have the greatest import"); *Proctor v. N. Lakes Cmty. Mental Health*, 560 F. App'x 453, 459-60 (6th Cir. 2014) (finding that a district court "did not [need to] comb through each and every [*Pioneer*] factor . . . because not all of the factors carry equal weight in each case") (citations omitted). Consequently, Plaintiffs' objection is overruled, and the court concludes that they have failed to demonstrate excusable neglect.

## B. Second Objection

Plaintiffs next object that the Magistrate Judge failed to consider the precedent that demonstrates the City's "residential property ordinance is unconstitutional on its face because it allows the issuance of search warrants on an *ex-parte* application by

City inspectors without safeguards." (ECF No. 52, PageID.788.) Plaintiffs argue that they should have been afforded the "procedural safeguards of a bi-parte hearing" where Plaintiffs had an opportunity to contest the search warrant before it was executed. (*Id.*, PageID.793.) Plaintiffs also ostensibly assert that the ordinance "as applied" to them raises specific constitutional issues because their properties are not properly subject to the NOORPR Ordinance. (*Id.*, PageID.793.) Specifically, Plaintiffs allege that the Magistrate Judge failed to consider the "known fact" that 514 West Biddle Street property fell within an exemption to the Ordinance, so Defendants' decision to still inspect the property violated their constitutional rights. (*See id.*) The court finds none of Plaintiffs' arguments persuasive.

### 1.      Facial Challenge

A facial challenge to a law's constitutionality is an effort "to invalidate the law in each of its applications, to take the law off the books completely." *Connection Distrib. Co. v. Holder*, 557 F.3d 321, 335 (6th Cir. 2009). "Generally, to succeed in a typical facial attack, a plaintiff must establish that no set of circumstances exists under which [the statute] would be valid." *Speet v. Schuette*, 726 F.3d 867, 872 (6th Cir. 2013) (citing *United States v. Stevens,* 559 U.S. 460, 472 (2010)) (quotations omitted). Here, the court finds that Plaintiffs have fallen well short of this burden. A careful review of the case law cited by Plaintiffs shows no support for the proposition that the Constitution requires that a property owner must be given the opportunity to challenge an administrative search warrant before it is issued.

Undisputedly, Jackson's NOORPR Ordinance requires that city officials seek a warrant before conducting an inspection of a residential property, absent an emergency

situation. *See* City of Jackson Code of Ordinances ch 14, § 14.42 ("In a nonemergency situation [the] official shall obtain a warrant from a court of competent jurisdiction."). Such a practice is consistent with the well-established strictures of the Fourth Amendment. In *Camara v. Municipal Court of City and County of San Francisco*, 387 U.S. 523 (1967), and *See v. City of Seattle*, 387 U.S. 541 (1967), the Supreme Court held that the Fourth Amendment applies to administrative inspections of private premises, including both dwellings and commercial premises. In these rulings the Court established that such inspections must be carried out pursuant to a warrant issued under standards appropriate to the administrative conduct involved.

However, the *Camara* Court also indicated that a lower probable standard tailored specifically to the administrative setting should be used. 387 U.S. at 538-539 (finding that a municipality must have a "warrant procedure [that] is designed to guarantee that a decision to search private property is justified by a reasonable governmental interest"); *see also City of Los Angeles, Calif. v. Patel*, 576 U.S. 409, 431 (2015) (Scalia, J., dissenting) (citing *id.*) ("When, for example, a search is conducted to enforce an administrative regime rather than to investigate criminal wrongdoing, we have been willing to modify the probable-cause standard so that a warrant may issue absent individualized suspicion of wrongdoing."). Ultimately, the Court concluded, based on the balance of interests, that administrative warrants to inspect a property did not require individualized suspicion. *Id.* at 537-38 ("Where considerations of health and safety are involved, the facts that would justify an inference of 'probable cause' to make

an inspection are clearly different from those that would justify such an inference where a criminal investigation has been undertaken") (citation and quotation omitted).

Courts consistently apply *Camara*'s prohibition on warrantless administrative inspections, absent other precompliance review, to municipal ordinances. *See*, *e.g., Halpern 2012, LLC v. City of Ctr. Line, Michigan,* 806 F. App'x 390, 394 (6th Cir. 2020) ("The parties do not dispute the facts, nor do they dispute that § 14-220 of the prior [Property Management Ordinance] was facially unconstitutional insofar as it failed to require a warrant procedure or provide an opportunity for pre-compliance review."); *MS Rentals, LLC v. City of Detroit*, 362 F. Supp. 3d 404, 419 (E.D. Mich. 2019) (Lawson, J.) ("[T]he City's PMC is unconstitutional under the Fourth Amendment because it authorized warrantless, nonconsensual inspections of rental properties without allowing the landlord an opportunity to seek a precompliance review."). But again, it is undisputed that Jackson's Ordinance requires that a warrant be obtained before conducting an administrative search absent an emergency.

Plaintiffs rely heavily on the Supreme Court's more recent decision in *City of Los Angeles, Calif. v. Patel*, which held that a city ordinance requiring that hotels keep a guest list available for physical inspection by police "on demand" *without* a warrant was unconstitutional. 576 U.S. 409*,* 412 (2015). In *Patel*, the Court recognized that there are circumstances under which applying for a warrant is impracticable, but even then, "absent consent, exigent circumstances, or the like, in order for an administrative search to be constitutional, the subject of the search must be afforded an opportunity to obtain precompliance review before a neutral decisionmaker." *Id.* at 420. Without such

precompliance review, an intolerable risk exists that searches will exceed statutory limits or be used to create a pretext for harassment. *Id.* at 2452-53.

Synthesizing the holdings of *Camera* and *Patel*, Plaintiffs reason that the Jackson's housing Ordinance is unconstitutional because, although it requires that an administrative warrant be issued, it allows such warrants to be issued *ex-parte*, thereby depriving Plaintiffs of "the opportunity for such 'precompliance review' or 'individualized review'" that *Patel* envisions. (*See* ECF No. 52, PageID.789.) Plaintiffs also rely on *City of Golden Valley v. Wiebesick,* a Minnesota case that upheld a rental property inspection ordinance requiring that officials obtain a warrant to conduct an inspection absent consent. 899 N.W.2d 152, 167-68 (Minn. 2017). Plaintiffs point out that the *Golden Valley* decision also found that "absent an emergency or other compelling need, a petition for an administrative search warrant should not be granted *ex parte*" because "[i]n civil proceedings, our rules usually require that both sides receive reasonable notice and an opportunity to be heard." *Id.* at 168 (citing Minn. R. Civ. P. 56.03; Minn. R. Civ. P. 65.02(a)).

As Magistrate Judge Stafford observed, however, Plaintiffs' constitutional argument quickly runs aground because *Patel* expressly states that it does not create such a bi-parte hearing requirement for searches predicated on a duly authorized warrant. *See Patel*, 576 U.S. at 427 ("[N]othing in our decision today precludes an officer from conducting a surprise inspection by obtaining an ex parte warrant."). Rather, *Patel* merely stands for the proposition that if a government agency *forgoes* formally seeking a warrant before conducting an administrative search, it must afford the interested party "an opportunity to have a neutral decisionmaker review an officer's

demand to search . . . before he or she faces penalties for failing to comply." *Patel*, 576 U.S. at 421, 423 ("But whatever the precise form, the availability of precompliance review alters the dynamic between the officer and the hotel to be searched, and reduces the risk that officers will use these administrative searches as a pretext to harass business owners.").[4] Consequently, the court finds that neither precedent nor logic supports such a holding.

Further, Plaintiffs' reliance on the Minnesota Supreme Court's decision in *Golden Valley* is misplaced because the court specifically based its bi-parte hearing requirement on Minnesota court rules, not any principle of constitutional law or federal statute. *See* 899 N.W.2d at *Id.* at 168 (citing Minn. R. Civ. P. 56.03; Minn. R. Civ. P. 65.02(a)). Because Plaintiffs point to no similar requirement in Michigan law, the court finds the opinion to be inapposite to the claims at bar.

In sum, the court finds that Plaintiff's facial challenge fails as a matter of law. *See Vonderhaar v. Vill. of Evendale, Ohio,* 906 F.3d 397, 401 (6th Cir. 2018) (holding that a plaintiff lacked standing to challenge a municipality's property maintenance code because "[a]ll of the evidence shows that the Village will get a warrant if it wishes to inspect a home.").

### 2.  Applied Challenge

The court also sees no reason why Jackson's non-residential property ordinance is unconstitutional as applied to Plaintiffs. First, reviewing the administrative search

---

[4]     Had the court adopted Plaintiffs' reasoning, it would essentially be concluding that the subject of an administrative search warrant—an intrusion that the Supreme Court has repeatedly indicated is comparatively minor—should be protected by more stringent procedural requirements than the target of a criminal search warrant. Criminal search warrants are almost always issued *ex parte*.

warrant and application authorizing the 2019 search of 514 W. Biddle Street, the court

finds that more than sufficient evidence to "justify an inference of probable cause"

required for a property inspection. *See Camara*, 387 U.S. at 537-38. The application

noted that the previous external inspection of the property had recorded numerous code

violations, ranging from a lack of maintenance (chipping paint, cracked concrete) to

more serious safety issues (missing electrical meter, lack of stair railing).  (*See* ECF No.

1, PageID.51-53.) Further, Plaintiffs testified they were presented with the warrant and

physically present at the scene, and refused to open the door, when City broke in to

execute the warrant.

Plaintiffs seemingly focus on the argument that the search of their Biddle Street

property was improper because it did not meet the definition of a "non-owner occupied

residential dwelling" under the NOORPR Ordinance. (ECF No. 52, PageID.793.) But

Plaintiff has failed to adequately develop this argument, and in any event, the language

of Jackson's NOOPRA Ordinance clearly applies to the Biddle Street property. The

Ordinance contains the following definition:

> *Non-owner occupied residential dwelling or unit* means any residential
> dwelling or unit constructed, intended, or currently used as habitable
> space in which the owner of the dwelling or unit does not reside, or where
> individuals other than or in addition to the owner reside, whether pursuant
> to an oral or written lease or for other valuable consideration including, but
> not limited to, cash, barter of goods and services, and imputed rent. This
> does not include relatives that reside with the owner in the same unit. . . .
> Examples of a non-owner occupied residential dwelling or unit include, but
> are not limited to, the following:
> > . . .
> > (6) A unit in which a non-owner is allowed to reside, unless
> > otherwise exempted in this Article, even if no consideration is paid

but the occupancy could be considered imputed rent by the Internal
Revenue Service.

City of Jackson Code of Ordinances ch. 14, § 14.3 (2018).

Plaintiff Francis Berkemeier conceded during his deposition that at the time of the
administrative warrant was executed that David Iuni, who provided property
maintenance and management services to Plaintiffs' other Jackson properties lived at
Biddle Street for free. (*See* ECF No. 34-3, PageID.461-62, 472.) Because this
arrangement falls within the definition of non-owner occupation, the Ordinance would
clearly require registration. Plaintiffs argue that because Francis Berkemeier has a life
estate in the property, he fits within an exemption to the Ordinance.  (*See* ECF No. 34-
3, PageID.472.) But Section 14-5 provides an exemption only for when "premises are
*occupied by* a person with a documented or recorded life estate in the premises." (City
of Jackson Code of Ordinances ch. 14, §14.5 (2018) (emphasis added). Therefore, the
court finds that the Magistrate Judge also correctly rejected Plaintiffs' as-applied
challenge.

### 3.  Individual Capacity Claims

The Fourth Amendment proscribes "unreasonable searches and seizures." U.S.
Const. amend. IV. Because the inspection of Plaintiff's home was conducted pursuant to
a warrant, his claim must fail if the warrant was validly issued. *See Steagald v. United
States*, 451 U.S. 204, 211-12 (1981) ("[T]he entry into a home to conduct a search or
make an arrest is unreasonable under the Fourth Amendment unless done pursuant to
a warrant."). To satisfy the requirements of the Fourth Amendment, a warrant must
issue on probable cause, be supported by a sworn declaration, and describe with
particularity the place to be searched. U.S. Const. amend. IV. And the Supreme Court

21

has observed that "officers executing search warrants on occasion must damage property in order to perform their duty." *Dalia v. United States*, 441 U.S. 238, 258 (1979).

The Magistrate Judge correctly recommended dismissal of Plaintiff's individual capacity claims because she found the search was constitutional. Plaintiffs' objections to the report and recommendation do not separately address the individual capacity claims, so they have been waived. *See Thomas*, 474 U.S. at 147.

### 4.  Remaining State Claims

The Magistrate Judge recommended dismissal of Plaintiffs' final three state law claims because they identified "no independent federal cause of action," and thus (Counts IV-VI) "depend on the Plaintiff's meritless constitutional claims." (ECF No. 51, PageID.771.) Plaintiffs have not directly objected to the Magistrate Judge's conclusion regarding these claims, so Plaintiffs have waived their right to "subsequent review by the district court." *See Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995).

### 5.  State Court Temporary Restraining Order

Finally, Plaintiffs' reply briefing raises a new issue not addressed in the initial objections. Plaintiffs appear to be suggesting that the Magistrate Judge erroneously did not address the "temporary restraining order," granted to Plaintiff by the state court in the present action preventing Defendants from enforcing the NOORPR Ordinance against them. (ECF No. 54, PageID.814.) Plaintiffs assert that Defendants "stipulated to the continuation of that relief for the pendency of the present action." (*Id.*)

Again, Plaintiffs cannot raise a new objection to the Report and Recommendation in a reply brief. *Scottsdale Ins.*, 513 F.3d at 553. But for the sake of clarity, the court will

briefly address the issue. The state court order granting a TRO in this action was never included with the initial notice of removal, and this court previously entered a stipulated order allowing Defendants to file a supplement to the notice of removal with a copy of the order. (*See* ECF ECF No. 13.) It appears such a supplement was never provided, so the court cannot independently confirm Plaintiffs' assertion that a TRO was entered in Michigan Circuit Court or that Defendants stipulated to its extension through the pendency of this action. Both the Federal Rules of Civil Procedure and the Michigan Court Rules provide that a TRO terminates automatically after fourteen days unless explicitly extended by a court or with consent of the adverse party. *See* Fed. R. Civ. P. 65(b)(2); MCR 3.310. So, assuming arguendo that such a temporary restraining order exists, and it was extended through the pendency of this ligation by stipulation, it will still automatically terminate when judgment is entered in this action. *See Singer Mgmt. Consultants, Inc. v. Milgram,* 650 F.3d 223, 236 (3d Cir. 2011) ("[T]emporary restraining orders may be issued with little or no notice and may dissolve on their own accord.").

## IV. CONCLUSION

For the reasons stated above, the court will overrule Plaintiff's objections and adopt the Magistrate Judge's well-reasoned R&R in full and without amendment. Accordingly,

IT IS ORDERED that Plaintiffs' objections (ECF No. 52) are OVERRULED, and the Magistrate Judge's December 12, 2021 Report and Recommendation (ECF No. 51) is ADOPTED IN FULL AND INCORPORATED BY REFERENCE.

IT IS FURTHER ORDERED that Plaintiffs' Appeal of the Magistrate Judge's Order and Opinion (ECF No. 50) is DENIED.

IT IS FURTHER ORDERED that Defendants' Motion for Summary Judgment

(ECF No. 34) is GRANTED.


s/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  September 22, 2022



I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, September 22, 2022, by electronic and/or ordinary mail.

s/Lisa G. Wagner
Case Manager and Deputy Clerk
(810)292-6522

S:\Cleland\Cleland\AAB\Opinions and Orders\Civil\19-12132.BERKEMEIER.ObjectionstoRR.AAB.docx